United States District Court
Southern District of Ohio
Western Division

HEALTH CAROUSEL, LLC,

    Plaintiff,

vs.

BUREAU OF CITIZENSHIP AND
IMMIGRATION SERVICES,
CALIFORNIA SERVICE CENTER

    Defendant.

Case No. 1:13-cv-23

Magistrate Judge Bowman

**MEMORANDUM OF OPINION AND DECISION**

Plaintiff, Health Carousel, LLC, brought suit against Defendant Bureau of Citizenship and Immigration Services ("USCIS"), under the Administrative Procedure Act (APA), 5 U.S.C. § 702, seeking judicial review of USCIS's decision denying Health Carousel's petition for an H-1B visa on behalf of Seetha Unnikrishnan Nambiar. This matter is now before the court on Plaintiff's motion for summary judgment (Doc. 19), Defendant's opposition to Plaintiff's motion (Doc. 20), and Defendant's cross-motion for summary judgment (Doc. 20). The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (Doc. 13).

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Health Carousel is a healthcare recruiting and placement company based in Cincinnati, Ohio. (Doc. 19 at 5). In October, 2011, Ms. Nambiar began work at Health Carousel as an international recruiter. (Doc. 20 at 6). Ms. Nambiar is a citizen of India, and was present in the United States with temporary work authorization. (*Id.*).

In the spring of 2012, Health Carousel began the process of obtaining a non-immigrant specialty occupation, or H-1B, visa for Ms. Nambiar by filing a Labor Condition Application (LCA), with the Department of Labor (DOL). (*Id.* at 6, 7). On the LCA, Health Carousel stated that it sought certification for the employment of an international recruiter. (*Id.* at 7). Health Carousel classified the position as a "human resources, training and labor relations" specialist under the DOL occupation code, and identified the prevailing wage for the position as "Wage Level I[1] (entry)." (*Id.*; Doc. 18 at 3). In April 2012, the DOL approved Health Carousel's LCA, and Health Carousel filed an I-129 petition with USCIS, requesting H-1B status on behalf of Ms. Nambiar. (Doc. 20 at 7; Doc. 19 at 4). In a letter attached to the petition, Health Carousel briefly described the duties of an international recruiter, and stated that, "an individual would need, at a minimum, a Bachelor's Degree or equivalent to perform the duties of the proffered position." (Doc. 18 at 3). In the same letter, Health Carousel also indicated that Ms. Nambiar had attained the equivalent of a U.S. master's degree in business administration. (*Id.*).

In August 2012, USCIS issued a Request For additional Evidence (RFE) related to the international recruiter position, which Health Carousel timely responded to. (Doc. 19 at 4; Doc. 20 at 8). In its reply to the RFE, Health Carousel submitted additional evidence, including: 1) a comprehensive, updated job description for the position (which included the requirement of "4 Year degree in Business, Human Resources, or

---

[1] DOL guidance states that **Level 1** (entry) wage rates are assigned to job offers for beginning level employees who have only a basic understanding of the occupation. These employees perform routine tasks that require limited, if any exercise of judgment. The tasks provide experience and familiarization with the employer's methods, practices, and programs. The employees may perform higher level work for training and developmental purposes. These employees work under close supervision and receive specific instructions on required tasks and results expected. (Doc. 18 at 13).

Communications and/or possess relevant experience" and 2+ years of previous relevant experience); 2) printouts from DOL sources; 3) online job postings and advertisements; and 4) letters and resumes from two college professors serving as experts. (Doc. 18 at 3-4).  USCIS denied the petition on October 17, 2012[2], having found that Health Carousel had failed to establish how Ms. Nambiar's "immediate duties would necessitate services at a level requiring the theoretical and practical application of at least a bachelor's degree level of a body of highly specialized knowledge in a specific specialty." (Doc. 19 at 4; Doc. 20 at 7).

Health Carousel then filed the instant suit, seeking judicial review of the October, 2012 denial.  (Doc. 19 at 4).  USCIS *sua sponte* reopened the case and issued a second RFE, which Health Carousel timely responded to with a letter, an affidavit from Health Carousel's Director of International Recruitment, Katie Glaser (which included clarified requirements of the position), and copies of previously submitted documents. (Doc. 20-1 at 8; Doc. 19 at 4; Doc. 18 at 7).  USCIS filed a motion to dismiss this action, which Judge Beckwith rejected on May 20, 2013, after USCIS's second denial of Health Carousel's H-1B petition on April 18, 2013.  (Doc. 19 at 4).  Following this denial, USCIS certified the decision to the Administrative Appeals Office (AA0). (Doc. 20-1 at 8).  The AAO affirmed USCIS's denial on June 7, 2013, finding that Health Carousel had not established that the proffered position of international recruiter qualifies as a specialty occupation. (*Id.*; Doc. 19 at 4; Doc. 18 at 2).  Additionally, the AAO addressed three other grounds, not addressed in either of the previous two denials, justifying the denial of  Health Carousel's petition; specifically, Health Carousel: 1) failed to properly file the I-129 and LCA because they have not been signed by an authorized official; 2) failed to

---

[2] Plaintiff's motion incorrectly lists the year of the denial as 2013.

3

submit a LCA that corresponds to the petition; and 3) failed to establish that it would pay an adequate salary for Ms. Nambiar's work. (Doc. 18 at 2).

## II. ANALYSIS

### A. *Overview of the Parties' Motions for Judgment*

Plaintiff Health Carousel claims that USCIS's denial of the visa petition was arbitrary and capricious. Health Carousel argues that: 1) the proffered position of international recruiter is a specialty occupation; 2) USCIS' determination that the position does not require a Bachelor's Degree in the specific specialty is contrary to the evidence and applicable law; 3) USCIS failed to draw obvious conclusions from DOL sources; 4) USCIS employed too narrow an analysis in evaluating relevant advertisements; and 5) none of the AAO's three *sua sponte* grounds for denial provide an adequate bases for the decision. Overall, Health Carousel claims that USCIS ignored relevant evidence, and articulated an irrational explanation for its decision, and thus asks the court to overturn USCIS's denial, and to order USCIS to approve the petition based upon the existing administrative record.

Defendant USCIS argues, however, that the decision to deny Health Carousel's visa petition was not arbitrary and capricious. USCIS claims that Health Carousel 1) failed to properly file the visa petition, 2) failed to acquire a LCA for the proper prevailing wage, and 3) failed to show that it will employ Ms. Nambiar in a specialty occupation, and that each ground, standing alone, is sufficient to affirm the AAO's denial of Health Carousel's petition. USCIS claims that it came to these conclusions after considering all of the evidence Health Carousel submitted and correctly applying the relevant statutes and regulations. Because the decision provides a rational connection between the law

4

and the facts, USCIS asks that judgment be entered in its favor and that the court affirm the denial of the H-1B petition.

  *B. Standard of Review*

The court's review of USCIS's denial of Health Carousel's H-1B petition is governed by the Administrative Procedure Act. 5. U.S.C. § 701, *et seq.* 5 U.S.C. § 704 provides that "final agency action" is subject to judicial review. In the present case, the relevant final agency action is the June, 2013 AAO decision, as opposed to either of the USCIS service center's previous two denials. Under the APA, the reviewing court shall set aside an agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). The scope of review under this standard is "narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Manufacturers Association v. State Farm Mutual Insurance Company*, 463 U.S. 29, 43 (1983). However, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (citing *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). Thus, under the APA's arbitrary and capricious standard, the court should overturn USCIS's decision only if USCIS failed to examine the relevant data or provide an explanation which included a rational connection between the facts and the denial of the petition.

In reviewing an agency action under the arbitrary and capricious standard, the court is limited to the administrative record upon which the agency based its decision. *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

5

material fact and the movant is entitled to judgment as a matter of law." As APA review is confined to the existing administrative record, there can be no disputed issues of material fact, and thus the case is well suited for resolution on the parties' motions for summary judgment. *See, eg. EG Enterprises, Inc. v. Department of Homeland Sec.*, 467 F.Supp. 728 (E.D. Mich. 2006) (granting defendant USCIS's cross-motion for summary judgment in case involving denial of H-1B visa petition).

> *C. USCIS's Denial of Health Carousel's visa petition was not arbitrary or capricious*

An employer may file an H-1B visa petition on behalf of a non-citizen worker who is "coming temporarily to the United States to perform services…in a specialty occupation described in section 1184(i)(1) of this title…who meets the requirements for the occupation described in section 1184(i)(2) of this title… and with respect to whom the Secretary of Labor determines and certifies to the Attorney General that the intending employer has filed with the Secretary an application under section 1182(n)(1) of this title." 8 U.S.C. §1101(a)(15)(H)(i)(b). A "specialty occupation" is one that "requires…theoretical and practical application of a body of highly specialized knowledge, and…attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1).

The related regulation defines "specialty occupation" as "…an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the

6

attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States." 8 C.F.R. 214.2(h)(4)(ii). The regulation further requires that a position also meet one of the following criteria, in order to qualify as a "specialty occupation:"

1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

2) The degree requirement is common to the industry in parallel positions among similar organizations, or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

3) The employer normally requires a degree or its equivalent for the position; or

4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8. C.F.R. § 214.2(h)(4)(iii)(A). Therefore, reading the law and regulations together, in order to qualify as a "specialty occupation," a proffered position must 1) require theoretical and practical application of a body of highly specialized knowledge, 2) necessitate a bachelor's degree or higher in the specific specialty (or its equivalent) as a minimum for entry into the occupation, and 3) meet one of the four alternative criteria listed above.

Here, the USCIS service center denied the H-1B visa petition because it found that Health Carousel failed to establish that the proffered position of international recruiter was a specialty occupation. Upon review, the AAO addressed the service

center's reason for the denial, and found that Health Carousel failed to meet any of the four alternative criteria to qualify as a "specialty occupation," and additionally addressed three independent grounds, not considered by the service center, that justified affirming the denial of Health Carousel's petition. A petition that does not comply with the technical requirements of the law may be denied by the AAO even if the service center does not identify all of the grounds for denial in the initial decision. *See Spencer Enterprises, Inc. v. United States,* 229 F. Supp. 2d 1025, 1043 (E.D. Cal. 2001). Because the AAO denied Health Carousel's petition on four[3] alternative grounds, Health Carousel can only succeed in its challenge by showing that USCIS abused its discretion with respect to each enumerated ground. *Id.* at 1037. USCIS must show that it had at least one valid ground for denial. *Id.*

    1. *Improperly filed I-129*

The AAO determined that the I-129 was improperly filed because it was not signed by Plaintiff's authorized official, as required by 8 C.F.R. § 102.2(a)(2), and thus the service center should have rejected Health Carousel's petition. (Doc. 18 at 8, 12). The I-129 submitted was accompanied by a document, which was not notarized, entitled "limited power-of-attorney." (Doc. 18 at 8). Health Carousel argues that it is long-standing USCIS policy to accept the use of power-of-attorney (POA), and a memorandum currently on USCIS' website supports this proposition. (Doc. 19 at 23, 24). However, USCIS correctly points out that by its terms, this 2007 correspondence applied to H-1B cases filed in 2008, and the petition at issue was filed in 2012. (Doc. 20-1 at 11). Furthermore, the AAO found that even if USCIS permitted the use of the

---

[3] The four alternative grounds are the three *sua sponte* issues the AAO first addressed, and the service center's determination that international recruiter was not a specialty occupation.

POA, the POA submitted in the instant case is invalid under Ohio law, which requires a POA be notarized. See Ohio Rev. Code Ann. § 1337.25; (Doc. 18 at 11). Health Carousel does not contest this finding. (Doc. 19 at 23, 24). The AAO applied the relevant regulation and state law to the facts of the case, and thus its decision does not constitute an abuse of discretion.

*2. Compatibility of LCA and H-1B petition*

The AAO examined the evidence submitted by Health Carousel, and determined that the LCA did not correspond to the H-1B petition and additionally fails to establish that Health Carousel will pay an adequate salary to the beneficiary, Ms. Nambiar. Specifically, the AAO identified a material discrepancy as between the LCA, in which Health Carousel claimed that the proffered position is a Level I, entry-level position (in which the employee has only a basic understanding of the occupation and performs routine tasks that require limited, if any, exercise of judgment) and Health Carousel's representation throughout the petition that the position is higher level and complex and thus fits within the "specialty occupation" category[4]. (Doc. 18 at 17). While Health Carousel correctly argues that the LCA lists the proper occupation of Human Resources, this, however, is not the end of the inquiry. Health Carousel and USCIS both cite to the relevant regulation, 20 C.F.R. § 655.705(b); however USCIS properly argues that it is DHS's (and thus USCIS') role to "determine[] whether the petition is supported by a LCA which corresponds with the petition." Nowhere in the regulation does it state that USCIS' role is simply to determine whether the LCA is in the proper

---

[4] As the AAO noted, the Plaintiff stated in its petition, *inter alia*, that the position required two or more years of relevant experience, that the beneficiary will engage in tasks that require the extensive use of independent judgment (such as identifying ways to improve and enhance existing company systems), and that the work of the beneficiary is "critical" to the company's success. (Doc. 18 at 14).

occupation, as Health Carousel claims. (Doc. 19 at 24). The AAO noted that the prevailing wage for a Level-I position of this type is $13.72 per hour ($28,538 per year), while it increase to $41,538 per year for a Level-II position, $54,517 per year for a Level-III position, and $67,517 per year for a Level IV position. (Doc. 18 at 15). The AAO found that if the beneficiary were granted the higher-level position described in Health Carousel's petition, but was paid the entry-level wage designated in the LCA, Health Carousel would be circumventing the requirements of INA § 212(n)(1)(A) (which serves to protect U.S. workers' wages), and failing to pay the beneficiary an adequate salary. While Health Carousel argues that the AAO did not cite any relevant authority or even make an argument regarding the lack of a relevant salary (Doc. 19 at 25), the Court notes that the AAO's analysis on this issue was logically intertwined with that of the LCA. Notably, the AAO cites to INA § 212(n)(1)(A) as statutory authority for its position. (Doc. 18 at 15). In affirming the service center's denial of the petition based on the inconsistency with the LCA and the petition, and the lack of adequate salary, the AAO articulated a rational connection between the law and the facts, and thus did not engage in arbitrary decision-making.

Furthermore, the AAO found that Health Carousel's wage level designation of the position on the LCA undermined not only Health Carousel's statements regarding the level of complexity, independent judgment and understanding required for the position, but also the *overall credibility* of the petition. (*Id.* at 17) (emphasis added). The AAO returns to this discrepancy again and again throughout the opinion. (*Id.* at 14, 15, 16, 17, 25, 27, 36, 37, 40, 44). Notably, despite the prominence of this issue in the AAO's decision, Health Carousel entirely fails to address it in its motion.

### 3. Specialty Occupation

Before addressing any of the four alternative criteria under 8. C.F.R. § 214.2(h)(4)(iii)(A), the AAO determined that the proffered position did not meet the definition of "specialty occupation," requiring a bachelor's degree or higher (or its equivalent) in the specific specialty as a minimum for entry. (Doc. 18 at 21); 8 U.S.C. § 1184(i)(1). The AAO found that the record contained three different iterations of the requirements for the position (in the original petition, in response to the first RFE, and in Katie Glaser's affidavit in response to the second RFE), all of which permitted a candidate to meet the minimum requirement through experience. The Glaser affidavit explained that the experience requirement indicates that Health Carousel will accept the equivalent of a U.S. bachelor's degree where a credentialing agency determines that the applicant's education and/or experience is equivalent to a bachelor's degree. (Doc. 19 at 16). However, the AAO noted that there are specific regulations about who can determine whether experience is equivalent to a bachelor's degree, and the standards USCIS is to apply when making its own determination of a beneficiary's credentials. (Doc. 18 at 20). Because Health Carousel did not explain the type or quantity of experience a candidate would need or the standards a credentialing agency would apply to determine equivalency, the AAO properly found that Health Carousel did not adequately show that a bachelor's degree (or higher) or its equivalent was required for the position. Health Carousel did not specifically address this finding.

Even if Health Carousel required a bachelor's degree or equivalent for the position, the AAO found that Health Carousel did not demonstrate that it need be in a specific specialty. The AAO found that in examining Health Carousel's first two

11

explanations of the educational requirements for the position, Health Carousel first required only a bachelor's degree (with no specific discipline), and then claimed that a "general purpose" degree in business administration is sufficient, neither of which satisfy the "specific specialty" requirement. (Doc. 18 at 22). Health Carousel points to *Tapis Int'l. v. I.N.S.,* 94 F. Supp. 2d 172 (D. Mass. 2000), to dispute the AAO's position on this point. *Tapis* held that an employee can satisfy the "specific specialty" requirement by requiring a bachelor's degree in business administration in addition to specialized experience in the particular field. *Id.* at 176. Health Carousel points to the Glaser affidavit, which demonstrates that Health Carousel required two or more years of "previous healthcare staffing, sales, account management… experience," (constituting specialized experience), in addition to the degree requirement. (Doc. 19 at 16). Health Carousel correctly notes that the AAO did not consider the abovementioned affidavit in concluding that Health Carousel only required a general-purpose bachelor's degree, and thus the position did not constitute a "specialty occupation." (Doc. 19 at 16). While the AAO noted previously in the decision that the Health Carousel had provided inconsistent information regarding the requirements for the proffered position (Doc. 18 at 19), it appears that the AAO ignored a critical piece of evidence in determining whether the Health Carousel met the "specific specialty" requirement. While this may constitute an abuse of discretion, Health Carousel cannot demonstrate that the AAO engaged in arbitrary and capricious decision-making on every other ground on which the denial rests, as would be required to find in Health Carousel's favor.

Health Carousel additionally argues that USCIS's decision was arbitrary and capricious because the AAO ignored a 2012 decision from the Southern District of Ohio

that addressed "the identical issue" (Doc. 19 at 3) in the instant matter. In *Residential Fin. Corp. v. U.S. Citizenship & Immigration Services*, 839 F. Supp. 2d 985 (S.D. Ohio 2012), the court granted summary judgment to the plaintiff who challenged USCIS's determination that the proffered position of market research analyst was not a specialty occupation. Far from ignoring *Residential Finance*, the AAO found that Health Carousel had failed to establish the relevancy of that case, and noted that the district court judge's decision appears to have been largely based on the numerous factual errors made by the service center in denying the petition. Furthermore, in *Residential Finance* the court found it "most bewildering" that USCIS rejected the evidence that the beneficiary would actually be performing the specific job duties listed in the record "*despite no evidence to the contrary and no other apparent reason for failing to credit the evidence on this record.*" 839 F. Supp. 2d at 996 (emphasis added). In contrast, as previously discussed, in the present case, the AAO noted numerous times in the decision that it was Health Carousel's certification of the LCA for a Level I, entry-level position which "undermines the credibility of the petition, and, in particular, the credibility of the petitioner's assertions regarding the demands, level of responsibilities and requirements of the proffered position." (Doc. 18 at 16). It clearly was the designation on the LCA, at odds with Health Carousel's description of the position, which provided a reason for the AAO to fail to credit the evidence on the record.

    *4. Four alternative criteria*

An employer must prove that a baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position in order to meet the first alternative criteria. Health Carousel argues that while the AAO properly

referred to the DOL *Handbook* as the appropriate source to determine the normal requirements for the position (and properly classified it as a Human Resources Specialist), the AAO misread the *Handbook* and failed to draw "obvious conclusions" therefrom, constituting arbitrary and capricious decision-making. Health Carousel quotes the DOL's finding that "[m]ost require a bachelor's degree… in human resources, business, or a related field." (Doc. 19 at 17). However, directly above this line, the *Handbook* states that "[h]owever, the level of education and experience required to become a human resources specialist varies by position and employer." (Doc. 18 at 25). Further down in the same section, the *Handbook* indicates that a high-school diploma may qualify for some interviewing and recruiting positions. (*Id.*). The AAO properly found that the analysis must be conducted in light of the fact that Health Carousel designated the wage level of the proffered position as a Level I, *entry*-level position. (Doc. 18 at 25). Again, Health Carousel failed to address this aspect of the AAO's reasoning in its motion. The AAO engaged in a rational reading when it found that because the level of education required for a human resources specialist varies by position, and Health Carousel sought to employ the beneficiary in a Level-I position (the lowest designation, requiring only a basic understanding of the occupation), the *Handbook* does not indicate that a bachelor's degree in a specific specialty is normally required.

Under the first clause of the second alternative criteria, an employer must show that the degree requirement (of a bachelor's degree or higher in the specific specialty) is common to the industry in parallel positions among similar organizations. 8 C.F.R. § 214.2(h)(4)(iii)(A)(2). Health Carousel submitted copies of eight advertisements in

support of its claim of the commonality of the degree requirement; however, the AAO found that the advertisements did not help Health Carousel establish eligibility for the visa. (Doc. 18 at 29). Health Carousel claims that the AAO "parsed" the text of the advertisements, "trying to find one way or another to invalidate the relevancy of the advertisement." (Doc. 19 at 18). However, Health Carousel fails to cite the relevant statutory framework under which the AAO evaluated the advertisements, which requires that the advertisements be for 1) positions parallel to the proffered position, and 2) organizations that are similar to Health Carousel in order to have any weight in the analysis. The AAO may properly reject evidence related to dissimilar positions at unlike companies, without abusing its discretion. *See, eg. Global Fabricators, Inc. v. Holder*, 320 Fed. Appx. 576 (9th Cir. 2009) (affirming AAO's rejection of advertisements based on lack of similarity between the organizations and failure to enunciate a degree requirement). The AAO did not simply recite the requirements and make a bare assertion that Health Carousel failed to meet them. On the contrary, the AAO analyzed all of the evidence submitted, and found that each advertisement either was not publicizing a parallel position at a company similar to Health Carousel, or did not articulate a degree requirement in the specific specialty. This was not overly narrow or arbitrary and capricious decision-making.

With respect to the third and fourth alternative criteria, it is undisputed that Health Carousel's job description did not require a degree; nor was there any evidence that Health Carousel had not hired any international recruiters without a degree. (Doc. 18 at 19-21, 42-43). Furthermore the AAO properly found that Health Carousel failed to: (1) identify any sufficiently "complex" duties for the proffered position; or (2) explain a

specific course of study that would be necessary to perform these duties. (Doc. 18 at 39-40). Health Carousel has failed to offer any evidence rebutting this conclusion.

As noted above, analysis under the APA is "narrow, and the court is not to substitute its judgment for that of the agency." *State Farm*, 463 U.S. 29, 43 (1983). Based on the existing administrative record, the Court finds that the AAO examined the relevant evidence, and rationally connected the law and regulations with the facts to support the various grounds for its decision.

### VII. CONCLUSION

For these reasons, **IT IS HEREIN ORDERED** that Defendant's motion for summary judgment (Doc. 20) is **GRANTED**, and Plaintiff's motion for summary judgment (Doc. 19) be **DENIED**. As no further matters remain pending, this action is now **TERMINATED** on the active docket of this Court.

    *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge